IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MERCK SHARP & DOHME CORP. | : | CIVIL ACTION |
| | : | |
| v. | : | No. 19-2011 |
| | : | |
| PFIZER INC. and WENDY J. WATSON | : | |

**MEMORANDUM**

**Juan R. Sánchez, C.J.**                                                                                                                       June 28, 2021

Merck Sharp & Dohme Corp. brings this trade secrets misappropriation action against Defendants Pfizer, Inc., and Dr. Wendy Watson, alleging Dr. Watson stole confidential information from Merck to use in her new employment at Pfizer. Progress in this case has been hampered by continuing discovery disputes, and Merck and Defendants have now filed cross motions to compel discovery. Both Pfizer and Merck have withheld relevant information. Each also asks the Court to compel production of material that is beyond the scope of discovery in trade secrets cases. The Court will grant in part and deny in part both motions.

**BACKGROUND**

Merck and Pfizer are competitors in the market for pneumococcal vaccines. Dr. Wendy Watson worked at Merck as a regulatory liaison in Merck's vaccine development programs. Dr. Watson was responsible for communication with the U.S. Food and Drug Administration for regulatory approval of Merck's vaccines and thus had access to confidential information on Merck's pneumococcal conjugate vaccine (PCV) program. In 2011, Dr. Watson left Merck for a similar position at Pfizer. Merck alleges Dr. Watson stole trade secrets from Merck's PCV program shortly before the end of her employment ten years ago to use in her new employment at Pfizer. Merck claims it only discovered Dr. Watson's alleged theft years later after a forensic investigation revealed she downloaded thousands of documents in the weeks prior to her departure, copied them

onto USB drives, and transferred the documents to her personal devices and Pfizer's computer systems. These documents allegedly included information on Merck's chemical manufacturing and controls, regulatory affairs, drug substance and clinical studies, proprietary manufacturing methodologies, competitive business intelligence, and business and marketing strategies. After the internal investigation and attempts with Pfizer to remediate the issue, Merck filed suit.

This case has been plagued by discovery issues since the outset. The crux of the dispute is the extent to which each corporate defendant must divulge information about its own PCV vaccine program to discover whether, and to what extent, Watson stole Merck's trade secrets and how exactly Pfizer benefited as a result. Pfizer claims it is entitled to detailed information on these trade secrets because such knowledge is necessary to determine the true scope of Dr. Watson's actions. Merck, on the other hand, argues it should not have to disclose the details of its trade secrets and instead should be allowed to take broad discovery on Pfizer's PCV program to understand how, when, and to what extent Pfizer benefitted from Merck's trade secrets. In short, Merck and Pfizer both seek to understand what, if any, information was stolen by Dr. Watson while at the same time disclosing as little as possible about their own vaccine programs.

Merck's motion seeks broad discovery on Pfizer's PCV program and asks the Court to strike Pfizer's global objection that Merck is only entitled to discovery on Merck's trade secrets appearing on Pfizer documents already produced. Pfizer claims these requests are an attempt by Merck to bypass its own discovery obligations and uncover expansive volumes of confidential information on Pfizer's PCV program.

Pfizer and Dr. Watson ask the Court to compel Merck to (1) provide more specific descriptions of trade secrets 128–133 and 135–145, (2) produce evidence that the 134 secrets at issue are not already in the public domain, (3) identify who developed each trade secret and when,

(4) confirm where Merck trade secrets appear on Pfizer's systems, (5) explain the independent economic value of each trade secret, (6) produce a witness to testify about each trade secret, (7) confirm which Pfizer patents and patent applications contain Merck trade secrets, (8) explain the circumstances of how and when Merck learned of Dr. Watson's alleged theft, and (9) produce its policies and procedures for protecting trade secrets and monitoring patent applications. Merck objects to these requests and argues Pfizer's deliberate withholding of key discovery prevents Merck from providing the requested information and that much of the requested discovery is protected by the attorney-client privilege.

**DISCUSSION**

Pfizer and Merck have both withheld important discovery. They simultaneously ask the Court to compel production from each other without abiding by the rules of discovery. Both motions are granted in part and denied in part.

Litigants may obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Courts must consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id*. Relevance here should be "construed broadly to encompass any matter that could bear on, or that could reasonably lead to other matter that could bear on any issue that is or may be in the case." *United States ex rel. Bergman v. Abbott Labs.*, No. 09-4264, 2016 WL 4247429, at *2 (E.D. Pa. Aug. 11, 2016) (quoting *Oppenheimer Funds, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). The scope of discovery is broad, but it is not unlimited. *See Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999).

3

There is no heightened standard for discovery in trade secrets cases, but "due to the sensitive nature of the material at issue and the potential for abuse of discovery in this particular area of the law, [c]ourts must, and do, tread cautiously." *Avaya Inc. v. Cisco Sys., Inc.*, No. 10-5881, 2011 WL 4962817, at *3 (D.N.J. Oct. 18, 2011). Because of the unique nature of trade secrets cases, plaintiffs bear a special burden as the only party with unrestricted knowledge of the exact trade secrets at issue. *See, e.g.*, *Knights Armament Co. v. Optical Sys. Tech., Inc.*, 254 F.R.D. 463, 467 (M.D. Fla. 2008) ("It is axiomatic that a party may not assert a cause of action for misappropriation of trade secrets without identifying for the opposing party the trade secrets at issue."). A trade secrets plaintiff must identify its trade secrets "with a reasonable degree of precision and specificity that is particular enough as to separate the trade secret from matters of general knowledge in the trade or of special knowledge of persons skilled in the trade." *Synygy, Inc. v. ZS Assocs.*, No. 07-3536, 2013 WL 3716518, at *2 (E.D. Pa. July 15, 2013).

Courts in this Circuit have explained that this standard requires trade secrets be identified with "sufficient particularity so that the reader understands how each such claim differs from public domain information—including public patent filings." *Arconic Inc. v. Novelis Inc.*, No. 17-1434, 2019 WL 10787764, at *2 (W.D. Pa. Feb. 25, 2019) (quoting *USSA v. Mitek Systems, Inc.*, 289 F.R.D. 244, 249 (W.D. Tex. 2013)).

Merck's motion asks the Court to order Pfizer to further respond to Merck Interrogatories 1–3 and 11 and produce broad discovery about the entirety of Pfizer's PCV vaccine program dating back to when Dr. Watson left Merck more than ten years ago. While this information is relevant insofar as Pfizer's PCV program allegedly capitalized on Merck's secrets, the request is overly broad and unduly burdensome. Merck is entitled to discovery that is relevant and proportional to its claims. The core of Merck's allegations is that Dr. Watson stole documents. The needs of the

4

case are dictated by this theory and particularly, the 134 secrets at issue. Discovery should be limited to information, documents, and files that will bear on the veracity of those allegations and as well as any defenses. Merck's attempt to obtain the entirety of Pfizer's program for the past decade—without tailoring the requests to the trade secrets at issue—appears to be an attempt to reverse engineer the discovery process in the hopes of uncovering a new theory of Dr. Watson's alleged theft. The request is unduly burdensome in terms of the cost of production to Pfizer but also because of the risk that Pfizer will be forced to disclose its own proprietary information that has nothing to do with this case. A mutually cooperative discovery process may reveal some of Merck's requested information, but the Court will not compel such an expansive discovery request which will necessarily reveal information far beyond the 134 secrets at issue here.

Merck also asks the Court to strike Pfizer's global objection which states Merck is only entitled to receive discovery on trade secrets that have appeared on Pfizer's systems as a result of the pre-suit investigations and discovery taken to date. This black-and-white proposition is not an accurate statement of the law. Were Merck to provide the specifics of the 134 trade secrets, Pfizer's discovery obligations would include all relevant, nonprivileged documents relating to those trade secrets. The global objection is stricken. Pfizer is ordered to supplement its responses consistent with the accompanying order.

Defendants' motion contains nine requests that fall into three categories. The first category contains six requests that can be summarized as seeking more specific information about the 134 trade secrets at issue. Defendants are entitled to learn about these allegedly misappropriated trade secrets, provided the requests are relevant, not unduly burdensome, and proportional to the needs of the case. Merck's descriptions of trade secrets 128–133 fail to meet this standard. Merck has agreed to withdraw these trade secrets to streamline the case, rendering this request moot. Merck

also recently added trade secrets 135–145, the descriptions of which are similarly vague. The Court will therefore grant the motion and order Merck to provide a detailed identification of trade secrets 133–145.

Second, Defendants' request to compel Merck to explain why each trade secret is not in the public domain. By asserting these matters as trade secrets, the burden lies with Merck to explain why these alleged trade secrets were not publicly available at the time they were allegedly stolen. Merck's burden to describe the trade secrets with reasonable particularity includes the duty to explain why each secret is not a matter of public knowledge, and the Court will order Merck to supplement its response accordingly.

Third, Defendants request the Court to compel Merck to provide a further response to Interrogatory No. 1 and disclose who developed each of the 134 trade secrets and when they were developed. This information exceeds the reasonable particularity standard and Merck is not required to search for and disclose this information. Identifying a single developer (or even a team of developers) and a date of development for each trade secret is not only exceedingly burdensome on Merck, but it also far exceeds what a trade secrets plaintiff is normally required to disclose as a matter of course. *See, e.g.*, *Xerox Corp. v. International Business Machines, Corp.*, 64 F.R.D. 367 (S.D.N.Y. 1974). Pharmaceutical research and development by its very nature makes this request significantly burdensome. Merck will be required to supplement the description of these trade secrets, and it has provided several witnesses to testify generally on this topic. Scouring the historical records of its PCV program to determine—to the extent such an endeavor is even possible—when each secret was developed and by whom, would be unduly burdensome. This request is denied.

Defendants' fourth request is to compel Merck to confirm or deny whether Merck's trade secrets appear on the population of Pfizer documents that have been produced thus far. Defendants present this request in nearly 320 individual requests for admission. This is too burdensome of a request. Because Pfizer and Dr. Watson will receive more robust descriptions of each of the 134 trade secrets, they will be able to confirm for themselves whether and where Merck's trade secrets appear on their systems. Furthermore, requests for admission are intended to be a "surgical device" to "eliminate issues over facts that are not in dispute." *Solomon v. East Penn. Mfg. Co.*, No. CV 16-6484, 2018 WL 1740530, at *2 (E.D. Pa. Apr. 11, 2018). It may appear Defendants' requests for admission seek a series of simple "yes or no" responses, but these requests are significantly more complicated. To determine whether 134 trade secrets appear in such a large population of documents is a matter of scientific interpretation. "To compel answers to vague and indefinite questions capable of more than one interpretation and which require an explanation thwarts the purpose of [requests for admission]." *Zen Investments, LLC v. Unbreakable Co.*, No. CIV. A. 06-4424, 2008 WL 4489803, at *2 (E.D. Pa. Oct. 7, 2008). This request is denied.

Defendants' fifth request asks the Court to compel Merck to supplement its response to Pfizer Interrogatory 7 and identify the economic benefit it receives from each of the 134 trade secrets. The reasonable particularity standard requires this. The description of a trade secret, including an explanation of why it is not a matter of public knowledge, goes hand-in-hand with the economic value realized by its owner. The economic value gained from one trade secret may overlap with the value gained from another trade secret, but a trade secrets plaintiff should be required to explain for each trade secret the economic value gained. This request is granted.

Defendants' sixth request seeks to compel Merck to produce witnesses on each of the 134 trade secrets. This is an extremely burdensome request. Merck has produced several Rule 30(b)(6)

witnesses to testify on its various areas of trade secrets. The Court interprets Defendants' request as seeking a separate witness to testify on each trade secret. Even if one witness were able to testify on multiple trade secrets, this request is overly burdensome and unnecessarily cumulative. This request is denied.

The second category of requests asks the Court to compel Merck to identify where in Pfizer's patents and patent applications Merck's trade secrets appear. Again, this exceeds the bounds of what the Court will compel. The parties do not cite any binding authority to support the proposition that Merck, after sufficiently identifying the secrets at issue, must also identify where on Pfizer's patents Merck's trade secrets appear. A trade secrets plaintiff must sufficiently describe the trade secrets at issue so that a defendant can understand how they differ from matters of public knowledge, including patent filings. Defendants should be able to make this determination when equipped with reasonably particular definitions of the trade secrets. The Court's ruling that Merck must supplement the description of each trade secrets renders this request cumulative and overly burdensome. This request is denied.

Defendants' third and final category of requests involves Merck's pre-suit investigations into Dr. Watson as well as Merck's policies and procedures for monitoring patent applications in the vaccine marketplace. Specifically, Defendants ask the Court to compel Merck to produce a witness on when and how Merck learned of Dr. Watson's alleged theft as well as a witness to testify on Merck's policies and procedures for monitoring patents and patent applications. Merck objected to these requests on the grounds that the requested information is protected by the attorney-client privilege.

The attorney-client privilege protects communications between attorneys and clients from compelled disclosure. *See, e.g.*, *In re Teleglobe Communs. Corp.*, 493 F.3d 345, 360 (3d Cir.

8

2007). There are four requirements: (1) a communication, (2) made between privileged persons, (3) in confidence, (4) for the purpose of obtaining or providing legal assistance for the client. *Id*. Provided this material is otherwise relevant, not overly burdensome, and proportional to the needs of the case—and it appears that it is—Merck should be able to produce this information without disclosing privileged communications.

In deposition, Merck's agents refused to identify the circumstances that triggered the investigation into Dr. Watson, the identity of the scientist who first learned of the patent that triggered the investigation, the identity of the persons interviewed as part of the investigation, the identity of persons who reviewed the documents Dr. Watson allegedly downloaded, and the identity of the person who provided the keyword searches that were used to search Dr. Watson's systems. Merck also refused to provide the policies and practices for monitoring or tracking patents and patent applications. These documents and facts are not protected by the attorney-client privilege because they are not communications. *See, e.g.*, *SEPTA v. Caremark PCS Health, L.P.*, 254 F.R.D. 253, 258 (E.D. Pa. Dec. 9, 2008) ("It is important to note that the attorney-client privilege usually protects the communications themselves . . . but to the extent that purely factual material can be extracted from privileged documents without divulging privileged communications, such information is obtainable." (citation omitted)). Merck is directed to furnish the requested material and, if there is truly privileged material contained therein, redact the documents and produce a privilege log.

**CONCLUSION**

The Court will grant in part and deny in part Merck's motion to compel and grant in part and deny in part Defendants Pfizer and Dr. Watson's motion to compel.

An appropriate order follows.

BY THE COURT:


 /s/ Juan R. Sánchez
Juan R. Sánchez, C.J.